David FLORES, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CF–803.

District of Columbia Court of Appeals.

Argued Nov. 30, 2011.

Decided Dec. 22, 2011.*

Deborah A. Persico, with whom Joseph A. Virgilio was on the brief, for appellant.

Katherine M. Kelly, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III and Magdalena A. Acevedo, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and NEWMAN, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

Following a jury trial, appellant David Flores challenges his conviction of assault with significant bodily injury.[1] Appellant

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on December 22, 2011. However, we subsequently granted the government's January 19, 2012 motion to publish and issued the opinion in its current form.

1. D.C.Code § 22–404(a)(2) (2007 Supp.). Appellant was also convicted of assault with a dangerous weapon, pursuant to D.C.Code § 22–402 (2001), and carrying a dangerous weapon, pursuant to D.C.Code § 22–4504(a) (2001). Appellant does not contest these additional convictions on appeal.

challenges the trial court's jury instruction, made in response to a juror's note, that if the jury determined that appellant acted recklessly to cause the assault with significant bodily injury, the jury was not required to find that appellant disregarded the specific risk of injury towards the complainant.[2] We affirm.

## I.

Complainant Hilbert Laray Evans III began his shift as a security guard at the Odalis Restaurant in Northwest Washington, D.C., at 8:00 p.m. Appellant and his three companions were intoxicated and aggressive towards the waitresses and other restaurant patrons. The restaurant's owner, watching appellant with the aid of surveillance cameras, informed Evans that "these guys have to go." When the owner of the restaurant approached appellant and asked him to leave, Evans saw appellant reach into his pocket and produce a black-handled switchblade, with which he made a stabbing motion towards the restaurant owner. Evans stepped in and pushed the owner aside, and attempted to apprehend appellant. Appellant then stabbed Evans twice—first making contact with Evans' bullet proof vest, and then stabbing Evans in the abdomen underneath the vest. Evans testified that he then placed appellant in a "choke hold," while appellant made efforts to "cut back" towards Evans, with the knife in his right hand, swinging it over his left shoulder. Appellant contends that he was simply trying to dispose of the knife to avoid an incident, since he was still on probation for a previous crime, and was caught off guard

when Evans placed him in a choke hold; in desperation, appellant pushed backwards against Evans with the open knife in his hand.[3] Evans led appellant outside, still in a choke hold, and removed the knife from appellant's hand. Appellant was placed under arrest and Evans left the scene to go to the hospital, where he received eight to ten stitches and a tetanus shot in treatment for his stab wound.

The indictment charged appellant with "unlawfully assault[ing] Hilbert Evans and intentionally, knowingly, and recklessly caus[ing] significant bodily injury to Hilbert Evans," pursuant to D.C.Code § 22–404(a)(2). At the close of trial, the jury was instructed on the elements of D.C.Code § 22–404(a)(2), including an instruction that the intent element of the statute could be satisfied where appellant "was aware of and disregarded the risk of significant bodily injury that his conduct created." During deliberations, the jury requested clarification of this instruction, asking whether "it was intentional by the authors of the law to omit reference to the victim" and whether "'to Evans' should appear after the words significant bodily injury." The court responded to the jury in writing, stating that D.C.Code § 22–404(a)(2) "does not mean that the risk of injury must be to Evans," and explained to counsel that "a jury could easily say we don't know really what [appellant] was thinking but at a minimum ... it was reckless." Defense counsel made no objection. The jury found appellant guilty on all counts. This appeal followed.

---

**2.** Appellant has not waived this claim as the government contends. This case is distinguishable from other cases where a party explicitly requests the omission or inclusion of a specific jury instruction, and then later challenges the instruction on appeal. See *Smith v. United States,* 801 A.2d 958, 961–62 (D.C.2002); *Jones v. United States,* 813 A.2d

220, 224 n. 4 (D.C.2002). Cf. *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993); *Brooks v. United States,* 655 A.2d 844, 849 (D.C. 1995).

**3.** This account later formed the basis of appellant's self-defense argument.

## II.

 We review for plain error a challenge to a supplemental jury instruction raised for the first time on appeal. *Trapps v. United States*, 887 A.2d 484, 488–89 (D.C.2005). Where no objection was made in the trial court, it is rare that a challenge to a jury instruction will justify reversal of a conviction. *Lopez v. United States*, 801 A.2d 39, 48 (D.C.2002). Appellant challenges the supplemental jury instruction, claiming that the trial court erred as a matter of law, misinterpreting both the plain language and legislative history of the assault with significant bodily injury statute.[4] We are unpersuaded by appellant's argument and find no such plain error here.[5]

 The language of the statute, D.C.Code § 22–404(a)(2), is plain and we need not look to its legislative history to find that the trial court's instruction was reasonable. *Hood v. United States*, 28 A.3d 553, 559 (D.C.2011) ("[I]f the plain meaning of the statutory language is clear and unambiguous and will not produce an absurd result, we will look no further." (citation and internal quotation marks omitted)). Further, even where terms within the statute remain undefined, "we presumptively accord them their ordinary meaning in common usage, taking into account the context in which they are employed." *Id.* "Recklessness" by nature involves a lack of directed action, and is unambiguous on its face.[6] *See In re Anderson*, 778 A.2d 330, 339 (D.C.2001) (recklessness is defined by one's "conscious indifference to the consequences of his behavior...."); *Reed v. United States*, 584 A.2d 585, 590 (D.C.1990) (recklessness

---

4. Appellant also contends that the trial court constructively amended the indictment with the supplemental instruction, thereby committing plain error. Constructive amendment occurs when the indictment differs, factually or legally, from the basis of appellant's conviction. *Johnson v. United States*, 613 A.2d 1381, 1384–85 (D.C.1992). Given the consistency in the language of the indictment, the language of the statute, the language of the supplemental jury instruction, and appellant's many opportunities to object to any such amendment during trial proceedings, we conclude that no such constructive amendment took place.

5. In support of appellant's argument that the trial court plainly erred in its supplemental jury instruction, appellant claims that his substantial rights were affected because the supplemental instruction eliminated jury doubt as to appellant's intent to harm the complainant, and further rendered impotent appellant's self-defense theory based on alleged intentional conduct. He further argues that the error affected the fairness and integrity of the proceedings as the instruction permitted the jury to convict appellant on a theory "of which he had no notice or opportunity to defend against." We need not reach these arguments, as we find no "clear or obvious error" in the trial court's supplemental jury instruction. *Tyson v. United States*, 30 A.3d 804, 807 (D.C.2011) (quoting *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (internal quotation marks omitted).

6. In addition, even if there were ambiguity in the statute, there is nothing in the legislative history to suggest that the reckless intent element should be interpreted in a way that was inconsistent with the supplemental instruction. The legislative history of the assault with significant bodily injury statute shows only that the Council of the District of Columbia aimed only to create an intermediary statute between simple assault and aggravated assault, which sheds no specific light on the recklessness element of D.C.Code § 22–404(a)(2). Accordingly, as in *Brooks*, "it would ignore common sense and [the] evident statutory purpose, to require identity between the intended victim of the assault and the person actually assaulted" in this case. *Brooks, supra*, 655 A.2d at 849 (internal citation and quotation marks omitted). Appellant's contention that one's reckless conduct must target the party actually injured would unnecessarily narrow a statute where no such intent by the legislature was evident.

entails a "lack of awareness or failure to perceive the risk of injury from a course of conduct under circumstances in which the actor should have been aware of the risk." (citation and internal quotation marks omitted)); BLACK'S LAW DICTIONARY 1385 (9th ed.2009) (recklessness is defined as a "state of mind in which a person does not care about the consequences of his or her actions"). As demonstrated in *Anderson* and *Reed*, the state of mind to which "recklessness" refers is commonly understood to lack an intended outcome or clearly identified result. *See Anderson, supra*, 778 A.2d at 339; *Reed, supra*, 584 A.2d at 590. Therefore, we assign the *mens rea* element of recklessness in D.C.Code § 22–404(a)(2) its ordinary meaning, consistently defined as conduct without direction or target. Moreover, on the facts of the case, Evans was clearly within an area affected by appellant's reckless conduct. We find no plain error in the trial judge's supplemental instruction that the recklessness required for assault with significant injury need not be specifically directed at the injured party.[7] For the foregoing reasons, we affirm appellant's conviction.

*So ordered.*

---

[7]. Even if we were to find error that was plain, such error would fail to affect appellant's substantial rights or affect the fairness, integrity, or reputation of judicial proceedings, where such overwhelming evidence of guilt existed. *Lancaster v. United States*, 975 A.2d 168, 173 (D.C.2009) (erroneous jury instruction did not seriously affect fairness, integrity or public reputation of proceedings where reasonable juror could find culpable intent). There was overwhelming evidence in the record for the jury to determine that appellant "knowingly, intentionally or recklessly"

caused Evans significant bodily injury beyond a reasonable doubt. Further, where conviction is based upon a single incident and a statute permits conviction on several alternative forms of intent, there is no plain error should the jury choose one over the other. *Smith, supra*, 801 A.2d at 962 n. 5 (D.C.2002); *see also Parks v. United States*, 627 A.2d 1, 8–9 (D.C.1993) (finding it permissible for the jury to decide between two alternative forms of intent when alleged assault was based on a single incident).