Fidel QUINTANILLA, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–1113.

District of Columbia Court of Appeals.

Argued Feb. 5, 2013.

Decided March 21, 2013.

---

bery at the intersection of Connecticut Avenue and K Street, N.W.[1] He appeals only from his conviction for felony assault.[2] During the robbery, the victim, Caroline Roth, suffered injuries to her head and hand. It is the extent of those injuries that provides the basis for appellant's "sufficiency of the evidence" claim on appeal: that Roth did not suffer a "significant bodily injury," a prerequisite to conviction under the felony assault statute. We agree with appellant that Roth's injuries were not "significant," as that term is defined under the statute and our case law. We, therefore, reverse appellant's conviction for felony assault and, in lieu thereof, remand for entry of a conviction for simple assault.

Montrell L. Scaife for appellant.

Kathryn Rakoczy, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman, Trevor N. McFadden, and Heather L. Carlton, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

After a jury trial, appellant was convicted of several crimes attributable to a rob-

## I.

Roth explained that after the robbery her head was "throbbing," "sore" and "very tender to the touch." She stated that she had swelling from "my right eye to [ ] behind my right ear." The throbbing lasted for "a week and a half." Roth's hand was also injured, and some of her fingers "stayed swollen for about three weeks." The injury to her index finger lasted the longest—it was "almost unusable for about two months" and "was in a lot of pain." Roth also reported "some bruising on my legs."

On the night of the robbery, after the police arrived at Roth's location, "an ambulance arrived as well." Roth explained

1. Appellant was convicted of robbery, D.C.Code § 22–2801 (2001); misdemeanor receipt of stolen property (RSP), D.C.Code § 22–3232(a), –3232(c)(2) (2001); misdemeanor receipt of stolen property as a lesser included offense of felony RSP, D.C.Code § 22–3232(a), –3232(c)(1) (2001); and felony assault with significant bodily injury, D.C.Code § 22–404(a)(2) (2012 Supp.). Accounting for concurrent sentences for the rob-

bery and assault, to be served consecutive to consecutive sentences for the RSP convictions, appellant received prison time of approximately seven years, coupled with three years of supervised release thereafter and payment of $300 under the Victims of Violent Crime Compensation Act of 1996.

2. See *supra* note 1.

that she was examined by "some EMTs on board" who took her into the ambulance. They "checked me out" and "took pictures of my head where I told them I had been hit." Roth also testified that the EMTs provided "some cold compresses for my head and hand" but did not offer medication. They also checked for a concussion but Roth stated that they told her she was "fine"; they "didn't think I had a concussion." Roth was worried that her "finger was broken," but the EMTs told her "it probably wasn't." Because she lacked health insurance, Roth declined transportation to the hospital; she "didn't know how serious the injuries would be" but "figured I could take care of myself and there was no need for the expense." (Roth added that, if she had been insured at the time, she "probably" would have gone to the hospital.) Roth testified that she and the EMTs then "just kind of hung out there," while she got herself "under control." She never sought further treatment for her fingers and "just kept icing them." She never took any medication, other than aspirin, for her injuries.

## II.

"In reviewing appellants' claims, we must view all the evidence in the light most favorable to the government and give deference to the right of the jury to weigh the evidence, determine the credibility of the witnesses, and draw all justifiable inferences of fact, making no distinction between direct and circumstantial evidence."[3] In order to affirm an appellant's convictions, "[t]he evidence must support an inference, rather than mere speculation, as to each element of an offense."[4] However, we will reverse if "no evidence" has been "produced from which guilt may reasonably be inferred."[5]

The District's felony assault statute[6] punishes, by up to three years in prison and a $3,000 fine, anyone who "unlawfully assaults, or threatens another in a menacing manner, and intentionally, knowingly, or recklessly causes significant bodily injury to another." The statute explains that "the term 'significant bodily injury' means an injury that requires hospitalization or immediate medical attention.

This statute was enacted to "fill the gap between aggravated assault and simple assault,"[7] the latter being a misdemeanor that does not require physical injury[8] while the former is a felony, punishable by ten years in prison for causing "serious bodily injury"[9]—an injury we have called "far more serious ... than assault with significant bodily injury" under the felony assault statute.[10] According to the D.C.

---

3. *Earle v. United States*, 612 A.2d 1258, 1265 (D.C.1992).

4. *In re L.L.*, 974 A.2d 859, 866 (D.C.2009)(quoting *Lewis v. United States*, 767 A.2d 219, 222 (D.C.2001))(internal quotation marks omitted).

5. *Lewis, supra* note 4, 767 A.2d at 222.

6. See *supra* note 1.

7. *Jackson v. United States*, 940 A.2d 981, 986–87 (D.C.2008)(internal quotation marks omitted).

8. D.C.Code § 22–404(a)(1)(2012 Supp.).

9. D.C.Code § 22–404.1 (2001). In *Nixon v. United States*, 730 A.2d 145, 149–150 (D.C. 1999), this court, in the absence of a definition in the aggravated assault statute, borrowed for that statute the definition of "serious bodily injury" from the statute that provides sentencing enhancements for sex offenses, namely: "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty."

10. *Colter v. United States*, 37 A.3d 282, 285 (D.C.2012).

Council's committee report explaining the bill for felony assault, the legislative intent was "to provide a penalty for assault that results in 'significant (but not grave) bodily injury.'"[11] In expressing his own understanding of the need for the proposed intermediate assault statute, the District's Attorney General cited victims who have been "seriously beaten, sometimes leaving the victim with black eyes, lacerations, broken bones, or serious bruising all over the body."[12]

This court has decided one case interpreting "significant bodily injury" in the felony assault statute. In R.S.,[13] we surveyed the legislative history and explained that "the threshold for significant bodily injury is markedly less severe than that required for aggravated assault."[14] We concluded that bodily injury will be "significant," within the meaning of the statute, whenever "the nature of the injury itself" would lead to "the practical need in the ordinary course of events for prompt medical attention."[15] The fact that an injured party immediately goes to a hospital or seeks other medical attention is not, in itself, determinative; nor is a decision not to do so.[16] The inquiry, therefore, is not whether the injuries were, or were not, cared for, but, rather, whether a reasonable juror could find that the injuries were of a "nature" that objectively—"in the ordinary course of events"—would, in the words of the statute, "require[ ] hospitalization or immediate medical attention."[17]

So what kind of injury requires "hospitalization or immediate medical attention"—the defining words for a bodily injury that is "significant"? Adopting a formulation crafted initially by Judge Byrd of the Superior Court in an earlier case, this court held in R.S. that "medical attention" means the "treatment" that is "necessary to preserve the health and wellbeing of the individual, e.g., to prevent long-term physical damage, possible disability, disfigurement, or severe pain."[18] Thus, the "attention" required—

---

11. In re R.S., 6 A.3d 854, 858 (D.C.2010) (citation omitted).

12. Id. (internal quotation marks omitted).

13. See supra note 11.

14. In re R.S., supra note 11, 6 A.3d at 859; see supra note 9 (quoting definition of "serious bodily injury" in aggravated assault case).

15. Id.

16. Id.

17. Id.; D.C.Code § 22–404(a)(2) (2012 Supp.). In R.S., we focused briefly on why the definition of "significant bodily injury" includes both "hospitalization" and "immediate medical treatment." It is "not easy," we said, "to envision a situation in which injury might require hospitalization and yet not also require immediate medical attention." In re R.S., supra note 11, 6 A.3d at 859 n. 3. We surmised, however, that this statutory distinction may be explainable by situations in which "an injury is only latent and manifests itself a considerable time after the fact; e.g., an unrecognized internal injury or concussion," id., that may require eventual hospitalization if not the perceived need for immediate medical attention. On the other hand, we would add, there is no provision in the statute for latent injuries that do not require hospitalization, even if they do ultimately require medical attention. It follows that, for injuries not requiring "immediate" medical attention, the injury will not be "significant" unless it does eventually require hospitalization.

18. Id. (quoting In re R.P., 136 Daily Wash. L. Rptr. 549, 552 (2008)(Byrd, J.))(internal quotation marks omitted). We approved the following language from R.P. equating "attention" with "treatment": An individual suffers significant bodily injury when the injury "necessitates the individual being taken to the hospital or receiving medical treatment shortly after the injury was inflicted. Hospitalization or medical treatment is required where it is necessary to preserve the health and wellbeing of the individual...." Id. (emphasis added).

"treatment"—is not satisfied by mere diagnosis; and treatment, to be "medical," must be aimed at preventing "long-term physical damage" and other potentially permanent injuries—or at least to abating pain that is "severe." Treatment is not "medical," therefore, if applied to lesser, short-term hurts. And we may infer, accordingly, that everyday remedies such as ice packs, bandages, and self-administered over-the-counter medications, are not sufficiently "medical" to qualify under the statute, whether administered by a medical professional or with self-help. Treatment of a higher order, requiring true "medical" expertise, is required.

■ In sum, our understanding of injuries that "require[ ] hospitalization or immediate medical attention"—meaning "significant bodily injuries"—excludes those which, although seemingly significant enough to invite medical assistance, do not actually "require" it, meaning the victim would not suffer additional harm by failing to receive professional diagnosis and treatment.

### III.

■ After applying the objective test from *R.S.* ("in the ordinary course of events") and the definitional language we have adopted from *R.P.* ("treatment ...

necessary to ... prevent long-term physical damage, possible disability, disfigurement, or severe pain"), we must conclude that a reasonable jury could not have found that Roth's bodily injuries were "significant." First, no medical treatment was provided in this case, only cold compresses; and Roth reported no long-term effects beyond "a week and a half" of headaches, swollen fingers "for about three weeks," and two months of an "almost unusable" index finger.[19] The "attention" Roth received from the EMTs, therefore, was not "require[d]" to preserve her health.

Second, Roth's subjective opinion that she was capable of treating her injuries without further attention from medical personnel may not indicate that, objectively, medical attention was not required—especially because her decision not to seek further examination of her injuries was motivated, to an appreciable extent, by her lack of medical insurance. On the other hand, Roth's opinion about her injuries was corroborated, to a meaningful extent, by her testimony repeating the statements of the EMTs, who told her that she probably did not have a concussion or a broken finger.

In this case, the evidence, objectively viewed, revealed that Roth received no

One can conceive of injuries (for example, a head injury that may or may not have resulted in a concussion) where immediate medical "attention" in the form of monitoring or even testing is required, but where no "treatment" is ultimately necessary to preserve or improve the victim's health. On the other hand, situations can surely arise when immediate then prolonged monitoring, coupled with testing, will eventuate in treatment. The question as to where the line is drawn between monitoring or testing and treatment in these fluid situations, however, is likely to become moot, as such scrutiny will normally involve hospitalization, the alternative basis for finding "significant" bodily injury.

19. These injuries are not comparable to the "laceration" in *R.S.* that "required four to six stitches" in the victim's ear, which had been "torn in two," eventually leaving "a scar"; or to the "fractured nose with a deep gash and profuse bleeding" in *R.P. See In re R.S., supra* note 11, 6 A.3d at 857, 858. More recently, we sustained a conviction for felony assault against a contention that the trial court plainly erred in crafting a supplemental jury instruction that defined "reckless" action under the statute. *See Flores v. United States*, 37 A.3d 866, 867 (D.C.2011)(conviction on evidence that victim received "eight to ten stitches and a tetanus shot" at a hospital "in treatment for his stab wound").

medical attention, as properly defined, and suffered no long-term consequences as "significant" bodily injury requires. The jury, therefore, as a matter of law, could not have found appellant guilty of felony assault, and the trial court erred in submitting that offense to the jury rather than limiting the jury's consideration to the lesser included offense of single assault. Accordingly, appellant's conviction for felony assault must be reversed for insufficient evidence. Because the evidence suffices for conviction of simple assault,[20] however, as counsel for appellant acknowledged at oral argument, we remand for entry of conviction, including sentencing, for that offense.

*So ordered.*