**Antonio C. NERO, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11–CF–1722.**

District of Columbia Court of Appeals.

Submitted May 21, 2013.

Decided Aug. 15, 2013.

Nancy E. Allen was on the brief, for appellant.

Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Elizabeth H. Danello, James E. Smith, and Lauren R. Bates, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and OBERLY, Associate Judges, and REID, Senior Judge.

OBERLY, Associate Judge:

Following a jury trial, appellant, Antonio Nero, was convicted of assault with a dan-

gerous weapon (ADW),[1] mayhem while armed,[2] aggravated assault while armed (AAWA),[3] felony assault,[4] and three counts of possession of a firearm during a crime of violence (PFCV)[5] as to Balvin Richards; ADW, felony assault, and PFCV as to Randy Brown; ADW, felony assault, and PFCV as to Mark Brown; and unlawful possession of a firearm by a convicted felon,[6] possession of an unregistered firearm,[7] and unlawful possession of ammunition.[8] Appellant was sentenced to sixty months' imprisonment for each count of ADW, mayhem while armed, AAWA and PFCV; thirty-two months' imprisonment for each count of felony assault; and twelve months' imprisonment for each remaining charge. The trial court ordered that appellant's sentences all run concurrently with one another, except that the sentences for each victim run consecutively to one another. Accordingly, appellant was sentenced to a total term of 180 months' imprisonment, to be followed by five years of supervised release, and appellant was ordered to pay $1,500 to the Victims of Violent Crime Compensation Fund.

On appeal, appellant argues, first, that the trial court erred in informing the jury of his prior felony conviction; second, that the jury lacked sufficient evidence to convict him of two of the three charges of felony assault; and third, that several of his convictions merge. Appellant does not separately challenge his ADW convictions except to the extent that he contends the court erred as to all charges in letting the jury know he had a prior felony conviction. We affirm in part, reverse in part, and remand for vacation of several of his convictions.

## I. BACKGROUND

On April 18, 2010, appellant's mother hosted a birthday party in her backyard, which was attended by appellant and other friends and family. Ronald Walthall, one of the guests, invited Mark Brown and asked him to bring marijuana. Mark Brown contacted Balvin Richards, who agreed to provide the marijuana, and then arranged for his nephew, Randy Brown, to drive them to the party.

After the men arrived at the party, Mark Brown went to the backyard, leaving Randy Brown and Richards with the car parked in the adjacent alley. Approximately thirty minutes later, appellant, Mark Brown, and Walthall joined Randy Brown and Richards in the alley. An argument ensued, during which appellant shot Richards at close range.

After he heard the gunshot, Mark Brown ran down the alley, and when he looked over his shoulder, he saw appellant turning toward him and then heard another gunshot. He could not tell if appellant's second shot hit anyone. Then, standing on the passenger's side of the car, appellant shot Randy Brown in his bicep through the car's raised window. Randy Brown drove away after Mark Brown got into the car, and the two were soon spotted by a police officer. After they told the police officer the location of the shooting, police officers and paramedics were dispatched to the

1. D.C.Code § 22–402 (2001).

2. D.C.Code §§ 22–406, –4502 (2001).

3. D.C.Code §§ 22–404.01, –4502 (2001).

4. D.C.Code § 22–404(a)(2) (2010 Supp.).

5. D.C.Code § 22–4504(b) (2001).

6. D.C.Code § 22–4503(a)(1) (2012 Supp.).

7. D.C.Code § 7–2502.01 (2001).

8. D.C.Code § 7–2506.01(a) (2012 Supp.).

scene where they found Richards bleeding in the alley.

All three men eventually were transported to the hospital. The doctors treating Richards discovered his spinal canal had been severed by bullet fragments, resulting in paralysis below the bullet wound. After examining his bicep, doctors gave Randy Brown "antibiotics, . . . pain control, and wound care." Mark Brown, who realized his shoulder had been injured only after a paramedic asked him to take off his jacket, was given pain medication, and his injury was bandaged.

## II. DISCUSSION

### A. Appellant's Prior Felony Conviction

■ At trial, appellant asked the court to sever the unlawful possession of a firearm charge or, in the alternative, to try the count in a bench trial. The trial judge denied both requests,[9] and, in light of that ruling, appellant stipulated to having a prior felony conviction. On appeal, appellant argues that the trial court erred by allowing the jury to hear that he had a prior felony conviction. Our review is for abuse of discretion. *Goodall v. United States,* 686 A.2d 178, 181 (D.C.1996).

■ One of the elements of unlawful possession of a firearm by a convicted felon is a prior felony conviction. *See* D.C.Code § 22–4503(a)(1). Therefore, appellant's argument that the admitted evidence of his prior felony conviction "served no legitimate purpose" is without merit. Moreover, appellant's invocation of *Eady v. United States,* 44 A.3d 257 (D.C.2012), is inapposite. In *Eady,* this court reversed because the defendant's prior convictions were presented to the jury despite the fact

they "played no part in the jury's consideration of the charged crimes, and w[ere] relevant only to sentencing." *Id.* at 263. Here, the stipulation regarding appellant's prior felony conviction was read to the jury to establish a necessary element of the charge of unlawful possession of a firearm by a convicted felon. Because the stipulation concerned an essential element of the charge, the trial court did not abuse its discretion in allowing the stipulation to be read to the jury.

### B. Sufficiency of the Evidence

Appellant next argues that there was insufficient evidence for the jury to convict him of so-called felony assault against Mark and Randy Brown. Felony assault is when a person "threatens another in a menacing manner, and intentionally, knowingly, or recklessly causes significant bodily injury." D.C.Code § 22–404(a)(2). Appellant contends that the government did not meet its burden of proving that Mark and Randy Brown's injures were significant.

■ We "review[ ] the sufficiency of the evidence *de novo,*" *United States v. Bamiduro,* 718 A.2d 547, 550 (D.C.1998), "view[ing] the evidence in the light most favorable to the prosecution, with due regard for the right of the jury, as the trier of fact, to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences." *Mitchell v. United States,* 64 A.3d 154, 156–57 (D.C.2013). "In order to establish a claim of insufficient evidence, appellant must show that the government failed to provide evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Derosiers v. District of Columbia,* 19 A.3d

9. Appellant does not challenge the trial court's denial of his request to sever the charge.

796, 798–99 (D.C.2011) (internal quotation marks omitted).

■■■ "[S]ignificant bodily injury" is an "injury that requires hospitalization or immediate medical attention." [10] D.C.Code § 22–404(a)(2). Thus, it does not include injuries that "do not actually require [medical attention], meaning the victim would not suffer additional harm by failing to receive professional diagnosis and treatment." *Quintanilla v. United States*, 62 A.3d 1261, 1265 (D.C.2013) (internal quotation marks omitted). Instead, the medical attention "must be aimed at preventing long-term physical damage and other potentially permanent injuries—or at least to abating pain that is severe" instead of "lesser, short-term hurts." *Id.* at 1264–65 (internal quotation marks omitted). Nor is the standard satisfied "by mere diagnosis" or "everyday remedies such as ice packs, bandages, and self-administered over-the-counter medications ... whether administered by a medical professional or with self-help." *Id.* at 1265.

■■■ This court has only had two occasions to analyze the type of injuries that constitute significant bodily injury. In *In re R.S.*, 6 A.3d 854, 859 (D.C.2010), this court held that a lacerated ear, which required four to six stitches, was a significant bodily injury. In contrast, this court held in *Quintanilla* that short-term headaches and swollen fingers did not constitute significant bodily injuries. 62 A.3d at 1265–66. Using these guideposts, we now consider when an injury created by a bullet is a significant bodily injury. Appellant notes in his brief that "[g]un shot wounds *seem* like they should easily meet the definition of 'significant bodily injury' under the statute," but we agree that they may not always rise to that level. Because we conclude that one injury in this case was a significant bodily injury and the other was not, we hold that wounds created by a bullet are not *per se* significant bodily injuries.

■■■ Considering the nature and extent of Randy Brown's injury, we hold that a reasonable juror could fairly conclude beyond a reasonable doubt that it was significant. Randy Brown was shot at close range and the bullet traveled through his bicep, causing "obvious pain" and bleeding. His doctor testified that similar wounds can be life-threatening, and that had Randy Brown not been treated, he "probably would have had a higher chance of wound infection," which demonstrates that there was a risk of long-term damage or complications. To ward off these risks, he was given antibiotics and pain medication in addition to "wound care." Randy Brown's injury is more similar in nature to the lacerated ear in *R.S.* than it is to the headaches and finger-swelling injuries in *Quintanilla*. Both Randy Brown and the victim in *R.S.* were bleeding as a result of their injuries and both clearly were in pain and needed immediate medical attention to abate the pain. *See R.S.*, 6 A.3d at 857.

■■■ The evidence of Mark Brown's injury, by contrast, does not support the

10. "Significant bodily injury" is used in contrast to "serious bodily injury," an element of aggravated assault, meaning "injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or loss or impairment of a bodily member or function." *(Marcel) Jackson v. United States*, 970 A.2d 277, 279 (D.C.2009); *see also (David) Jackson v. United States*, 940 A.2d 981, 986–87 (D.C. 2008). Historically, the only alternative to simple assault, which has no injury requirement, was aggravated assault. *See In re R.S.*, 6 A.3d 854, 857–58 (D.C.2010). In 2006, the District of Columbia Council amended the Code to include felony assault, defining significant injury with the intention of creating an intermediate level of injury severity. *See id.* at 858.

jury's conclusion that it was a significant injury. Mark Brown was approximately nineteen feet away from appellant when he was shot and did not even realize that he had been injured until a paramedic had him remove his jacket. The record does not contain an exact description of Mark Brown's injury; while he testified that he was hit in the shoulder, it is unclear whether the bullet actually penetrated his skin or merely grazed it.[11] The only medical treatment Mark Brown received was diagnostic tests, pain medication, and wound care. As set out in *Quintanilla*, tests alone do not speak to an injury's significance. 62 A.3d at 1264–65. While it is unclear in this instance whether the administration of pain medication and wound care were "everyday remedies," we can say that the treatment Mark Brown received was not "necessary . . . to prevent long-term physical damage, possible disability, disfigurement, or *severe* pain." *Id.* at 1264–65 (quoting *R.S.*, 6 A.3d at 859) (emphasis added). This conclusion is confirmed by Mark Brown's treating physician who testified that if Mark Brown had not been treated, "probably not much" would have happened, and that he "would have had pain, he would have needed pain medication and perhaps wound dressing."

In light of the above, we conclude that the evidence was sufficient for a reasonably jury to conclude beyond a reasonable doubt that Randy Brown's injury was significant, while the evidence was insufficient to support a similar finding as to Mark Brown's injury.

### C. Merger

■ Finally, appellant makes three merger arguments, all of which the government accepts. "The Double Jeopardy Clause compels merger of duplicative convictions for the same offense, so as to leave only a single sentence for that offense." *McCoy v. United States,* 890 A.2d 204, 216 (D.C.2006). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "Merger issues are reviewed *de novo.*" *Appleton v. United States,* 983 A.2d 970, 978 (D.C.2009).

■ First, appellant contends that his convictions for ADW, mayhem while armed, and AAWA against Balvin Richards should all merge, leaving a single count of either AAWA or mayhem while armed. AAWA and ADW merge, *see Gathy v. United States,* 754 A.2d 912, 919–20 (D.C.2000), and mayhem while armed merges with AAWA when against the same victim, *see Graure v. United States,* 18 A.3d 743, 765 (D.C.2011). Therefore, we hold that appellant's convictions for ADW, AAWA, and mayhem while armed merge into a single AAWA conviction.

■ Appellant next contends that his convictions for felony assault and AAWA, both against Balvin Richards, merge. The injury required by the two crimes is different, but only in degree; AAWA requires the more severe "serious bodily injury" while felony assault requires "significant bodily injury." *See* D.C.Code § 22–404(a)(2); D.C.Code § 22–404.01. Because the elements of felony assault are a subset of the elements of AAWA, the two merge into one conviction of AAWA.

11. While the doctor who treated Mark Brown found the wound consistent with a "bullet entry site," there is no mention of an exit wound, nor any procedure to remove a bullet from his body.

Appellant finally contends that three of his convictions for PFCV, again relating to Balvin Richards, merge into a single conviction. Merger is proper because the predicate offenses—ADW, mayhem while armed, and AAWA—merge into one, and because the PFCV convictions arise "out of [appellant's] uninterrupted possession of a single weapon during a single act of violence." *Matthews v. United States,* 892 A.2d 1100, 1106 (D.C.2006).

## III. CONCLUSION

For the reasons discussed herein, appellant's conviction for felony assault against Mark Brown is reversed. We remand for possible resentencing and the vacation of appellant's convictions for ADW, mayhem while armed, felony assault, and two counts of PFCV, all against Balvin Richards. Appellant's remaining convictions are affirmed.

*So ordered.*

