*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CF-939

REGINALD K. TENEYCK, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-693-12)

(Hon. Heidi M. Pasichow, Trial Judge)

(Argued February 26, 2014                    Decided April 2, 2015)

*Sydney J. Hoffman* for appellant.

*Gilead I. Light*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *Elizabeth H. Danello,* Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and FERREN, *Senior Judge*.

BECKWITH, *Associate Judge*: Appellant Reginald Teneyck was convicted of

several charges stemming from a January 2011 attempted robbery of a man who

was talking on his mobile phone in his parked car near Dupont Circle.[1]  On appeal, Mr. Teneyck challenges both the sufficiency of the evidence supporting his felony assault conviction and the fairness of his sentence, which he argues was improperly based on hearsay and rumors about his involvement in other thefts.  While we conclude that the trial judge did not err when sentencing Mr. Teneyck, we agree that the government presented insufficient evidence that the cuts the complainant sustained on his hands during the incident amounted to "significant bodily injury" for purposes of the felony assault statute.

## I.

The complainant in this case, Paul McDonough, testified that he was sitting in his parked Toyota Sequoia on Jefferson Place, N.W., taking part in a conference call on his phone when a man he identified at trial as appellant Reginald Teneyck approached his vehicle.  After Mr. McDonough rebuffed Mr. Teneyck's attempts to talk to him, Mr. Teneyck smashed the front passenger window, strewing broken glass throughout the car, and grabbed Mr. McDonough's laptop computer.  The

---

[1]  A jury convicted Mr. Teneyck of assault with intent to commit robbery, D.C. Code § 22-401 (2012 Repl.); assault with significant bodily injury—also known as "felony assault," D.C. Code § 22-404 (a)(2) (2012 Repl.); and misdemeanor destruction of property, D.C. Code § 22-303 (2012 Repl.).  The trial judge also found him guilty of violating conditions of release.  D.C. Code § 23-1328 (a)(1) (2012 Repl.).

two men struggled over the computer before Mr. McDonough, a wrestling coach, grabbed Mr. Teneyck's clothing and pulled him partly inside the vehicle. Mr. McDonough and a passerby who rushed to help him held Mr. Teneyck in this position until the police arrived.

Mr. McDonough testified that he first noticed his hands were cut from broken glass after the police had arrested Mr. Teneyck. A police officer suggested that Mr. McDonough speak with an emergency medical technician (EMT) about his injuries, and the EMT asked if Mr. McDonough "wanted to go to the hospital." Mr. McDonough said he did and was taken by ambulance to Georgetown University Hospital, where a doctor took X-rays and a sonogram to locate any shards of glass in his hand. Though the record does not indicate how many shards were detected, a doctor removed one piece of glass by making an incision in Mr. McDonough's finger. Mr. McDonough received no sutures for the incision and was not hospitalized. A doctor gave him pain medication, which he said he took for "the next couple of days." Mr. McDonough also testified that at the time of trial, more than three months after the incident, he thought he still might have a

small piece of glass in his finger but he had not sought treatment for that.[2]

No doctor or EMT testified at trial, but the government introduced photographs of Mr. McDonough's hands taken after the incident and reports from the EMTs and physicians who treated him. The D.C. Fire and EMS report stated that Mr. McDonough had "cut his hand" on the glass from his car window and listed Mr. McDonough's "[c]omplaint" as "laceration to hands." In its "findings," the report stated that Mr. McDonough was "upset," that he was "bleeding," and that there was "no sign of decreased circulation." The report also indicated that the EMTs "successful[ly]" treated the wound and controlled the bleeding by applying "direct pressure" with "gauze pads." The Georgetown University Hospital report indicated that an X-ray was performed and stated the diagnosis as "foreign body in hand" and "abrasion/laceration."

## II.

Mr. Teneyck first argues that the record contains insufficient evidence to sustain his felony assault conviction. We will reverse a conviction on grounds of insufficient evidence if "the evidence, when viewed in the light most favorable to

---

[2] Mr. McDonough also testified that his wrist was injured during the altercation. The government notes in its brief that it does "not argue on appeal that this injury met the statutory definition of a 'significant bodily injury.'"

the government, is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (quoting *Curry v. United States*, 520 A.2d 255, 265 (D.C. 1987)) (emphasis deleted). Juries are "entitled to draw a vast range of reasonable inferences from evidence," but they "may not base a verdict on mere speculation." *Id*. (quoting *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990)).

The felony assault statute, D.C. Code § 22-404 (a)(2) (2012 Repl.), punishes "[w]hoever unlawfully assaults, or threatens another in a menacing manner, and intentionally, knowingly, or recklessly causes significant bodily injury to another[.]" Mr. Teneyck's primary contention on appeal is that the complainant's injury was not "significant" under our case law. A significant bodily injury is an "injury that requires hospitalization or immediate medical attention." D.C. Code § 22-404 (a)(2). To qualify under the statute, the immediate medical attention must be aimed at one of two ends—"'preventing long-term physical damage and other potentially permanent injuries'" or "'abating pain that is severe' instead of 'lesser, short-term hurts.'" *Nero v. United States*, 73 A.3d 153, 158 (D.C. 2013) (quoting *Quintanilla v. United States*, 62 A.3d 1261, 1265 (D.C. 2013)). An injury is not "significant" when it can be treated with first-aid remedies such as "ice packs, bandages, and self-administered over-the-counter medications." *Id.* The standard

is objective: The relevant inquiry is not whether a person in fact receives immediate medical attention but whether medical treatment beyond what one can administer himself is immediately required to prevent "long-term physical damage, possible disability, disfigurement, or severe pain." *In re R.S.*, 6 A.3d 854, 859 (D.C. 2010) (citation omitted).[3]

The government here does not assert that Mr. McDonough's injury "require[d] hospitalization" under D.C. Code § 22-404 (a)(2),[4] but it challenges

---

[3] Applying this standard, we concluded that an injury was "significant" when a bullet "traveled through [the complainant's] bicep, causing 'obvious pain' and bleeding"—a wound an expert witness characterized as potentially life-threatening without treatment—*Nero*, 73 A.3d at 158, and when a complainant was kicked in the head, her head hit a metal gate, and her ear "burst open," requiring four to six stiches and leaving a scar. *In re R.S.*, 6 A.3d at 856, 859. Similarly, although a sufficiency claim was not before the court, no party in *Flores v. United States*, 37 A.3d 866 (D.C. 2011), questioned that a stab wound requiring eight to ten stitches and a tetanus shot constituted a significant bodily injury. *Id.* at 867. By contrast, we concluded that the government's evidence of a significant bodily injury was insufficient when a bullet "merely grazed" the complainant's skin, he initially "did not even realize that he had been injured," and a physician testified that without medical attention, "'probably not much' would have happened." *Nero*, 73 A.3d at 159. We likewise did not find sufficient evidence of a significant bodily injury where a woman who had been hit during a robbery had a swollen face and fingers and a "sore" head that was "very tender to the touch." *Quintanilla*, 62 A.3d at 1262. Even though one of her fingers was "almost unusable for about two months" and "in a lot of pain," we noted that these injuries required nothing more than "everyday remedies" such as ice and aspirin. *Id.* at 1262-63, 1265.

[4] Although Mr. Teneyck was in fact treated at a hospital, "hospitalization" under the statute requires more than being admitted for outpatient care. *Cf., e.g.*,

(continued…)

Mr. Teneyck's claim that the injury did not require "immediate medical attention" under the statute. "[T]o accept appellant's argument," the government contends, "one must conclude that . . . McDonough could have simply left the shards of glass in his hand without any further action and not risked any 'long term physical damage.'" The focus here is not, however, whether Mr. McDonough needed to remove the glass to prevent long-term damage,[5] but whether a medical professional was required to remove the glass because Mr. McDonough could not have safely removed it himself—for example, with tweezers or another self-administered remedy. *See Quintanilla*, 62 A.3d at 1265 (injury not significant when it can be treated with "everyday remedies such as ice packs, bandages, and self-administered over-the-counter medications . . . whether administered by a medical professional or with self-help"). While broken glass might under some

---

(…continued)
*Hill v. District of Columbia*, 345 A.2d 867, 868 (D.C. 1975) (appellant was "hospitalized" for five months and "returned to the hospital on an outpatient basis . . . for some time thereafter"); *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 955 (D.C. 2003) (similar); *In re L.W.*, 613 A.2d 350, 357 (D.C. 1992) (child was "hospitalized . . . as an inpatient" and "treated as an outpatient"); *In re Reed*, 571 A.2d 801, 804 (D.C. 1990) (distinguishing "hospitalization" and "outpatient status"); *In re D.I.S.*, 494 A.2d 1316, 1320 (D.C. 1985) (same); *Dunphy v. Kaiser Found. Health Plan*, 698 A.2d 459, 463 (D.C. 1997) (same).

[5] As the trial court noted, "common sense" suggests the glass should be removed, though it is worth noting that Mr. McDonough decided against seeking treatment to remove a piece of glass that may have remained in his finger even at the time of trial.

circumstances cause a "significant bodily injury," the government has not established that the cuts Mr. McDonough sustained to his hands were any different from the sort of everyday household injury people treat on their own after handling broken glass. Nor does the record support an inference that Mr. McDonough needed treatment "immediate[ly]" as required by D.C. Code § 22-404 (a)(2). *See, e.g.*, *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (stating that quarter-inch sliver of glass in a man's palm did not "require[] immediate medical attention" and noting that the delay in having a physician remove that glass did not "exacerbate[] his injuries in any way").

At the outset, although none of the people who treated Mr. McDonough testified, according to Mr. McDonough's own testimony, the EMT characterized a trip to the hospital as optional, asking whether Mr. McDonough "wanted" to go and opining that it would be "better" to have his hands cleaned up at the hospital.[6] The government highlights the evidence that once Mr. McDonough was at the hospital, a doctor made an incision to remove one shard from Mr. McDonough's finger, contending that this fact in itself demonstrates a significant injury. Yet the felony assault statute does not reach injuries that, "although seemingly significant

---

[6] A police officer, not Mr. McDonough, called for an ambulance without Mr. McDonough's knowledge.

enough to invite medical assistance, do not actually 'require' it." *Quintanilla*, 62 A.3d at 1265. Again, the standard is an objective one, and the fact that medical treatment occurred does not mean that medical treatment was required. *In re R.S.*, 6 A.3d at 859. Here, where the incision was small enough that stitches were unnecessary and where the jury heard nothing about the size of the piece of glass the doctor removed, how deeply it was embedded, and whether professional medical treatment was required to remove the shard as opposed to just making removal easier, the fact that a doctor made an incision to facilitate removal of the shard does not support a reasonable inference that "immediate medical attention," as defined by our case law, was necessary. "[T]he evidence is insufficient if, in order to convict, the jury is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *James v. United States*, 39 A.3d 1262, 1269 (D.C. 2012).

The record also contains insufficient evidence that Mr. McDonough's treatment was aimed at "preventing long-term physical damage and other potentially permanent injuries" or at "abating pain that is severe" and not "short-term." *Nero*, 73 A.3d at 158 (quoting *Quintanilla*, 62 A.3d at 1265). As to long-term physical damage, the government presented no evidence that Mr. McDonough would suffer any protracted injury to his hands as a result of the assault. The government points to evidence that Mr. McDonough's discharge

instructions from Georgetown University Hospital advised him to be wary of "signs of infection," but the fact that a cut carries an unquantified risk of future infection—as even the most minor cuts and scrapes might[7]—does not, in itself, render it a "significant" injury under our case law. *Cf. Jackson v. United States*, 940 A.2d 981, 990 (D.C. 2008) (reversing aggravated assault conviction when the "most potentially serious aspect of the injury" was a risk of infection that "never materialized"). *See also Quintanilla*, 62 A.3d at 1265 (concluding that an injury is not significant when it can be treated with "self-administered over-the-counter medications"); *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 497 (D.N.J. 2012) (describing the intended use of an over-the-counter antibiotic ointment as "the prevention of infection and pain relief at the sites of scratches, cuts and other minor wounds").

With respect to severe pain, the government argues that Mr. McDonough had a significant injury within the meaning of the statute because doctors gave him pain medication to abate potential "throbbing" in his finger after the incision. As an initial matter, the record does not show whether the medication required a

---

[7] *Poplar v. Bourjois, Inc.*, 69 N.Y.S.2d 252, 255 (N.Y. App. Div. 1947) (noting that "all sorts of minor cuts and abrasions sustained in the ordinary course of life" may become infected), *aff'd*, 80 N.E.2d 334 (N.Y. 1948).

doctor's prescription or was available over the counter.[8] And even if the medication required a prescription, Mr. McDonough testified that his injuries were merely "a bit painful . . . uncomfortable or what have you," and that he took pain medicine only for "the next couple of days." Our cases have not considered this level of pain to be "severe" for purposes of the felony assault statute. *See Nero*, 73 A.3d at 159 (noting that even if the pain medicine taken for a gunshot wound was not an "everyday remed[y]," it was not necessary to prevent "severe pain"); *Quintanilla*, 62 A.3d at 1262 (finding insufficient evidence of significant bodily injury when complainant's head was "throbbing" and her finger was "in a lot of pain").

As the record contains insufficient evidence that the cuts on Mr. McDonough's hands required hospitalization or immediate medical attention, his injuries cannot be deemed "significant" under the felony assault statute.

**III.**

Mr. Teneyck next argues that the trial court improperly relied on "rank

---

[8] When Mr. McDonough returned to the hospital a week later, he sought treatment only for the wrist pain that the government concedes was not a significant injury for purposes of the felony assault statute. At this visit, Mr. McDonough declined the pain medication the doctor offered him and indicated he would take his own Motrin.

rumor, speculation, and hearsay embedded within hearsay" when sentencing him. Specifically, he challenges the reliability of (1) the two police officers' testimony at sentencing that he had a reputation for auto theft in the community and (2) the government's report that auto theft in the area decreased after his arrest. At sentencing, one police officer testified that Mr. Teneyck was "associated with theft from auto and various bits of theft." She stated that if she saw Mr. Teneyck while on routine patrol, she would tell other officers to "keep [their] eyes out" for thefts and that "usually" an auto theft would be reported within two hours. A second officer testified that various "snitches" "always" implicated Mr. Teneyck in local auto thefts, that Mr. Teneyck was "known for theft from autos" on this officer's beat, and that the officer once detained Mr. Teneyck on suspicion of auto theft, but his application for an arrest warrant was denied. The government also presented a report claiming that there was "an over 50 percent drop" in car thefts from a specific neighborhood after Mr. Teneyck was arrested.

"[D]ue process dictates that a 'trial judge may not rely on mistaken information or baseless assumptions' and must instead rely only on '*reliable* evidence'" when sentencing a criminal defendant. *Wallace v. United States*, 936 A.2d 757, 780 (D.C. 2007) (quoting *Harris v. United States*, 612 A.2d 198, 208 (D.C. 1992)) (emphasis in original). In that regard, "courts must be concerned . . . when the sentencing process [has] created a significant *possibility* that

misinformation infected the decision." *Bradley v. District of Columbia*, 107 A.3d 586, 598 (D.C. 2015) (alteration in *Bradley*) (quoting *United States v. Hamid*, 531 A.2d 638, 644 (D.C. 1987)). The appellant bears the burden of showing that the "sentencing judge actually relied on the unreliable evidence." *Wallace,* 936 A.2d at 780; *Saunders v. United States*, 975 A.2d 165, 167 (D.C. 2009).

Assuming the evidence elicited at the sentencing hearing in this case was unreliable, Mr. Teneyck has not demonstrated a significant possibility that the trial court relied on such evidence when determining his sentence. On the contrary, the court expressed skepticism regarding the officers' veracity and instead appears to have relied solely upon Mr. Teneyck's presentence report. The judge noted, for example, that Mr. Teneyck had "one of the longest Presentence Reports [she had] received," alluding to Mr. Teneyck's extensive criminal history (including 26 theft-related charges). By contrast, the court expressed doubts about the officers' testimony, stating, "I have to say, not everything that has occurred I'm sure in the Second District in the [Police Service Areas] that they work in, 208 in particular and maybe 207, are [sic] attributable to [Mr. Teneyck] . . . I don't know." This statement also signaled skepticism regarding the government's report attributing 50% of the nearby auto thefts to Mr. Teneyck. So while the judge relied on Mr.

Teneyck's criminal history in determining his sentence,[9] her knowledge of this history appeared to stem from Mr. Teneyck's presentence report—the reliability of which Mr. Teneyck has not contested—rather than the vague testimony about Mr. Teneyck's reputation among police officers.

As Mr. Teneyck has not shown a significant possibility that the sentencing judge relied on unreliable evidence at his sentencing hearing, we have inadequate grounds for concluding that his sentence violated due process.

**IV.**

For the reasons above, we reverse Mr. Teneyck's conviction for felony assault and remand with instructions to enter a judgment of acquittal on that count[10] and to resentence Mr. Teneyck accordingly.[11]

---

[9] The judge referred to "all these other cases where you're breaking windows to take things that aren't yours" and the fact that Mr. Teneyck had "prayed [sic] off of other people and it has to stop."

[10] While we would typically direct the trial court on remand to enter a judgment of conviction on the lesser included offense of simple assault under D.C. Code § 22-404 (a)(1) (2012 Repl.), *see Quintanilla*, 62 A.3d at 1266, a simple assault conviction would merge with Mr. Teneyck's conviction for assault with intent to rob. *Cf. Waller v. United States*, 389 A.2d 801, 808 (D.C. 1978) (assault merges with assault with a dangerous weapon).

[11] *See Brown v. United States*, 464 A.2d 120, 126 n.7 (D.C. 1983) (remanding for resentencing when vacating one of two convictions for which

(continued…)

15

*So ordered.*

_____

(…continued)

appellant had been sentenced concurrently); *Mitchner v. United States*, 531 A.2d 666, 667 n.1 (D.C. 1987) (noting same); *cf. Johnson v. United States*, 107 A.3d 1107, ___ (D.C. 2015) (slip op., at 13-14).