*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CF-184

DARREN CHEEKS, APPELLANT,

v.

UNITED STATES, APPELLEE.

09/07/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF3-1704-15)

(Hon. Yvonne Williams, Trial Judge)

(Argued April 4, 2017                    Decided September 7, 2017)

*Stefanie Schneider*, Public Defender Service, with whom *Samia Fam* and *Alice Wang*, Public Defender Service, were on the brief, for appellant.

*Jennifer B. Loeb*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Alicia Long*, and *Rizwan Qureshi*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and REID, *Senior Judge*.

Opinion for the court by GLICKMAN, *Associate Judge*.

Opinion for the court by FISHER, *Associate Judge*, with whom REID, *Senior Judge*, joins, at page 14.

Opinion by GLICKMAN, *Associate Judge*, dissenting in part, at page 23.

GLICKMAN, *Associate Judge*: The jury at appellant Darren Cheeks's trial acquitted him of assault with significant bodily injury (ASBI) while armed, but – after having asked the court to clarify the application of its instruction on aiding and abetting liability – found Cheeks guilty of the lesser-included offense of unarmed ASBI. Mr. Cheeks contends on appeal that the trial court erred in submitting the lesser-included offense to the jury and in responding to the jury's request for clarification.

The court rejects these contentions and affirms appellant's conviction. It does so in two opinions. This one, which all members of the division join, sets forth the facts relevant to both of appellant's claims but addresses and decides only his first contention. We hold that sufficient evidence justified the trial court's decision to instruct the jury on unarmed ASBI as a lesser-included offense.

The court's decision with respect to appellant's second contention is contained in the accompanying majority opinion of Judge Fisher. That opinion, which Judge Reid joins, holds that the trial court did not abuse its discretion in responding to the jury's clarification request.[1]

---

[1] The author of this opinion disagrees with the majority on that issue in his separate dissent.

**I.**

Appellant was indicted with two other men, Roland Plater and William Montague, on one count of aggravated assault while armed (AAWA)[2] and a second count of assault with a dangerous weapon (ADW).[3] Prior to trial, the AAWA count was reduced to ASBI while armed.[4] The charges arose from the stabbing and beating of Michael Harris. Montague was tried separately from his co-defendants and was acquitted. Appellant and Plater were tried together.

At their trial, Michael Harris testified that the assault began when Plater and Montague found him near Ayers Place in Southeast Washington, D.C., as he was walking home on the evening of January 17, 2015. According to Harris, Plater got out of a truck driven by Montague, accused Harris of stealing his cell phone, and pulled out a knife and stabbed him. Harris took flight.

---

[2] D.C. Code §§ 22-404.01, -4502 (2012 Repl.).

[3] D.C. Code § 22-402 (2012 Repl.). The second count against appellant was a lesser-included offense of the first.

[4] D.C. Code §§ 22-404 (a)(2), -4502 (2012 Repl.).

Rounding the street corner, Harris ran into appellant and a second man whom Harris did not know. Harris hoped they would assist him, but instead appellant and his companion attacked him themselves, punching him multiple times in the face and head. Plater caught up with them and stabbed Harris from behind. As the three-on-one assault continued, Harris dropped to his knees and fell to the ground. Appellant and the unknown second man then began to kick and stomp him.

Eventually, the three assailants abandoned the attack and left. As they departed, Harris recalled at trial, appellant told him "that he hoped that I die and that I better not tell nobody." Despite that admonition, Harris called the police, and paramedics transported him to the Washington Hospital Center.[5]

---

[5] Virtually every aspect of Harris's description of the assault and his injuries, as well as his general credibility, was vigorously challenged on cross-examination at trial. Among other things, Harris admitted to having given inconsistent accounts of the incident to the police, to having lied about his identity to the paramedics and the prosecutor, and to having a lengthy criminal history. In addition, there were discrepancies between Harris's description of his injuries and the medical testimony, for example with respect to the number of stab wounds he sustained.

Dr. Ashley Humphries, after being qualified as an expert in trauma surgery and critical care surgery, testified to her examination and treatment of Harris following his arrival at the hospital. In her opinion as a trauma surgeon, Harris's injuries required immediate medical attention and necessitated his hospitalization. He had sustained four "penetrating" stab wounds that required immediate treatment including stitches, staples, and the administration of antibiotics, fentanyl (an opioid) for pain relief, as well as various tests, including x-rays and ultrasounds of Harris's chest, abdomen, pelvis, and heart, to rule out internal injuries in those areas (which they did). Harris also had multiple other injuries from the beating he received, including abrasions, bruising, and swelling around his left eye, jaw, nose and forehead. Dr. Humphries ordered CAT scans of his brain and face in order to determine whether he had any bleeding into or around the brain or any broken bones. The brain scan found swelling around Harris's forehead but no "intrinsic" brain injury or blood surrounding the brain. The CAT scan of Harris's face found a nasal bone fracture, which Harris attributed to his beating, though his discharge papers referred to it as an "old" fracture.[6] After about four hours at the hospital,

---

[6] Harris testified that his nose was gushing blood after the assault and that it actually was broken by his assailants. However, his hospital discharge papers reported that Harris had an "old nasal fracture," implying it might have predated the assault. Although Dr. Humphries confirmed that the blood she observed on Harris's nose was of recent origin, she was not asked and did not express an opinion on whether the nasal fracture was likewise recent.

Harris was discharged. He was mobile and received no additional medications or medical care.

Although appellant was not armed during his encounter with Harris, he was prosecuted at trial for armed ASBI on the theory that he aided and abetted Plater's stabbing of Harris. At the close of trial, the court therefore instructed the jury as follows:

> Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. . . . To find the defendant aided and abetted in committing a crime, you must find the defendant knowingly associated himself with the commission of the crime and that he participated in the crime as something he wished to bring about and that he intended by his actions to make it succeed. . . . With respect to the charge of assault with significant [bodily] injury while armed, regardless of whether the defendant is an aider or abettor or principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with intent or knowledge.[7] An aider and abettor is legally

---

[7] The court earlier had instructed the jury on the government's burden to prove that the defendants "either intended to cause significant bodily injury to Michael Harris or knew that significant bodily injury to Michael Harris would result from the conduct or was aware of and disregarded the risk of bodily injury that their conduct . . . created." *See* D.C. Code § 22-404 (a)(2) (stating the required *mens rea* as "intentionally, knowingly, or recklessly" causing significant bodily injury to another).

responsible for the principal's use of a weapon during an offense if the government proves beyond a reasonable doubt that the aider and abettor had actual knowledge that the principal would be armed with or would have readily available a dangerous weapon during the commission of the offense.[8]

Recognizing that the jury might not find appellant knew Plater was armed during the assault on Harris, the government asked for an instruction allowing the jury to convict appellant of unarmed ASBI as a (second) lesser-included offense.[9] The government argued that the jury could find appellant guilty of the unarmed offense (either as a principal *or* as an aider and abettor) based on the non-stabbing injuries Harris suffered in the beating. Appellant objected and argued that the non-stabbing injuries were not serious enough by themselves to support a finding of "significant bodily injury." In response, the government cited the fact that Harris's head wounds were serious enough for Dr. Humphries to order CAT scans to determine whether Harris had suffered a concussion or other brain injury. The court, agreeing with the government that the jury could base a finding of

---

[8] *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 3.200 *Aiding and Abetting* (5th ed. rev. 2016).

[9] *Vis-à-vis* appellant, the ADW count of the indictment was also a lesser-included offense, pertinent in the event the jury found appellant knew Plater was armed but did not find that Harris sustained significant bodily injury.

significant bodily injury on this evidence, overruled appellant's objection and gave the lesser-included-offense instruction.

Initially, the court was not asked to give, and did not give, a *mens rea* instruction specific to aiding and abetting an unarmed ASBI like the *mens rea* instruction it gave for aiding and abetting the armed offense. During its deliberations, however, the jury (which had been given a written copy of the court's instructions) sent a note requesting the court to "[c]larify instructions on the specifics of the aiding & abetting[,] specifically for the assault w[ith] significant injury." The court read this note to the parties from the bench. Because the aiding and abetting instruction had stated the government's specific burden to prove the defendant's intent or knowledge only "with respect to" the charge of ASBI while armed, the court surmised that the jury was inquiring whether the instruction on aiding and abetting applied to the other charged offenses. The court therefore proposed simply to tell the jury that the instruction on aiding and abetting it had given "applies to every offense with which the defendants are charged." Appellant asked the court to tell the jury explicitly with respect to the unarmed ASBI charge that "regardless of whether the defendant is [charged as] an aider or abettor, the government must prove beyond a reasonable doubt that [he] personally acted with

intent or knowledge." The court refused this request, saying it was "in the instruction already" and did not need to be repeated.

Although the parties were entitled to see the jury note themselves,[10] they did not ask to do so and the court did not show it to them. Had they looked at the note (which is part of the record before us on appeal), the parties would have discovered that it contained a crossed-out question directly above the one the court read out loud to them. The crossed-out question, of which the court made no mention, read: "Does the aiding & abetting apply to assault w/significant injury? (charge II, on count 1)?" Not having seen or been informed of this question, appellant did not argue its implications at the time.

On the following day, after having received the court's one-sentence written response that the aiding-and-abetting instruction applied to all the charged offenses, the jury returned its verdict on the charges against appellant. The jury

---

[10] *See Hallmon v. United States*, 722 A.2d 26, 27 (D.C. 1998) ("Communications with the jury during its deliberations are just as much a part of the trial as the voir dire or the examination of witnesses, and thus are subject to the strictures of Criminal Rule 43 . . . . With respect to notes to and from the jury, this court has consistently held that '[a] defendant and his counsel have a right to be informed of all communications from the jury and to offer their reactions before the trial judge undertakes to respond.'") (citation omitted).

acquitted him of armed ASBI but found him guilty of the unarmed lesser-included offense.[11] The jury was unable to reach a unanimous verdict on the charges against Plater, and a mistrial was declared in his case.

## II.

Appellant's first claim is that the trial court erred in granting the government's request for an instruction on unarmed ASBI as a lesser-included offense of ASBI while armed. The premise of the instruction was that a rational jury might acquit appellant of Harris's stabbing for want of sufficient proof that appellant knew Plater was armed, but still could find appellant guilty of unarmed ASBI based on the other injuries Harris received from the beating in which appellant participated.[12] Appellant challenges that premise. He argues there was insufficient evidence that the beating by itself caused Harris "significant bodily

---

[11] The jury also acquitted appellant of ADW and found him guilty of the lesser-included-offense of simple assault. The court noted that appellant's ASBI and simple assault convictions would merge (if the ASBI conviction were to be upheld on appeal).

[12] "[B]efore the court may instruct the jury on any lesser-included offense, there must be 'evidence before the jury that would rationally support a finding that appellant committed the lesser offense but not the greater.'" *Beaner v. United States*, 845 A.2d 525, 540 (D.C. 2004) (quoting *Glymph v. United States*, 490 A.2d 1157, 1160 (D.C. 1985)).

injury" within the meaning of D.C. Code § 22-404 (a)(2).[13] But given this court's precedential construction of the statutory language and our recognition that "[a]ny evidence, however weak, is sufficient to support a lesser-included instruction so long as a jury could rationally convict on the lesser-included offense after crediting the evidence,"[14] we must reject appellant's sufficiency argument.

The statute defines "significant bodily injury" as "an injury that requires hospitalization or immediate medical attention."[15] Our cases have understood "hospitalization" to "require[] more than being admitted for outpatient care,"[16] and "medical attention" generally to refer to expert medical treatment to prevent "long-term physical damage" or abate "severe" pain rather than to "mere diagnosis" or the alleviation of "lesser, short-term hurts."[17] "In sum," we concluded in *Quintanilla*, "our understanding of injuries that 'require[] hospitalization or

---

[13] The government agrees that sufficiency *vel non* of the beating injuries is the issue before us; it concedes that appellant's conviction for unarmed ASBI cannot be upheld based on the knife wounds Harris suffered.

[14] *Tucker v. United States*, 871 A.2d 453, 461 (D.C. 2005) (citations and quotation marks omitted).

[15] D.C. Code § 22-404 (a)(2).

[16] *Teneyck v. United States*, 112 A.3d 906, 909 n.4 (D.C. 2015).

[17] *Quintanilla v. United States*, 62 A.3d 1261, 1264-65 (D.C. 2013) (citations and quotation marks omitted).

immediate medical attention'—meaning 'significant bodily injuries'—excludes those which, although seemingly significant enough to invite medical assistance, do not actually 'require' it, meaning the victim would not suffer additional harm by failing to receive professional diagnosis and treatment."[18]   But the court in *Quintanilla* qualified this conclusion in one respect important to the present case. It envisioned that an injury might come within the statutory definition of a "significant bodily injury" if its *potential* gravity demands medical examination and testing to ascertain or rule out the need for prompt medical treatment; "for example," apropos of the present case, "a concussion[] where immediate medical 'attention' in the form of monitoring or even testing is required, but where no 'treatment' is ultimately necessary to preserve or improve the victim's health."[19]

We addressed such an injury in *Blair v. United States*.[20] The victim in that case was taken to a hospital emergency room after an attack in which her assailant "repeatedly slammed her face into the ground"[21] and she suffered neck and jaw pain, soft tissue swelling and bruising to her face and around her eye, and multiple

---

[18]  *Id.* at 1265.

[19]  *Id.* at 1264 n.18.

[20]  114 A.3d 960 (D.C. 2015).

[21]  *Id.* at 964.

scratches and abrasions.[22]  The emergency room physician ordered CAT scans and an X-Ray of her head and neck to determine whether she had sustained "significant" internal head injury.[23]  Fortunately for her, the diagnostic screening apparently ruled that out, and she was discharged from the hospital.  There was no evidence she received medical treatment to avert long-term physical injury or other additional harm, or to mitigate severe pain.  Nonetheless, this court concluded that "[w]hile not every blow to the head in the course of an assault necessarily constitutes significant bodily injury, . . . where . . . the defendant repeatedly struck the victim's head, requiring testing or monitoring to diagnose possible internal head injuries, and also caused injuries all over the victim's body, the assault is sufficiently egregious to constitute significant bodily injury."[24]  The court affirmed the appellant's ASBI conviction.

Blair confirms what Quintanilla intimated:  that although a "significant bodily injury" is usually one calling for professional medical treatment to prevent long-term physical damage or avert severe pain, it also may be an injury that poses

[22]  Id. at 979.

[23]  Id.

[24]  Id. at 980.

a manifest risk of such harm and requires diagnostic testing to evaluate the danger and need for treatment – even if the testing reveals that treatment is unnecessary.

*Blair* is on point; the evidence of a felony assault in this case that the jury could credit is comparable to the evidence in that case. Like the witnesses in *Blair*, Harris testified to a prolonged beating that included repeated blows to his head, and Dr. Humphries described his extensive bodily injuries attributable to the beating, including the facial abrasions, bleeding, bruises and swelling that led her to order CAT tests to determine whether Harris had sustained brain damage, broken bones, or other serious internal injuries. As in *Blair*, such testimony was sufficient to support a rational finding that Harris's injuries demanded "immediate medical attention" in the form of diagnostic testing to evaluate his need for medical treatment to prevent grave long-term physical damage. The evidence therefore was sufficient to support a finding that appellant inflicted "significant bodily injury," and the court did not err in granting the government's request for the lesser-included offense instruction.

FISHER, *Associate Judge*, with whom REID, *Senior Judge*, joins: Appellant's second claim is that the trial court erred by failing to respond appropriately to the jury's request to "[c]larify instructions on the specifics of the aiding & abetting[,]

specifically for the assault w[ith] significant injury." Appellant argues that the trial judge's response did not ensure that the jury understood the *mens rea* required for a conviction of unarmed ASBI under an aiding and abetting theory.

We review the trial court's response for abuse of discretion. *See, e.g.*, *Whitaker v. United States*, 617 A.2d 499, 501 (D.C. 1992). "The concept of 'exercise of discretion' is a review-restraining one." *Johnson v. United States*, 398 A.2d 354, 362 (D.C. 1979). A trial judge has abused her discretion only when her "exercise of discretion was in error" and "the impact of that error requires reversal." *Id.* at 367.

"If the jury demonstrates its confusion before the final verdict is taken in open court, the court is required to take some action in an effort to clear away that confusion." *Preacher v. United States*, 934 A.2d 363, 368 (D.C. 2007) (per curiam) (internal quotation marks omitted); *see also Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946) ("When a jury makes explicit its difficulties[,] a trial judge should clear them away with concrete accuracy."). We are mindful that when "reviewing jury instructions, we look at the instructions as a whole" in order to determine whether there was prejudicial error. *Bates v. United States*, 834 A.2d 85, 92 (D.C. 2003) (internal quotation marks omitted).

Here, the trial judge did not err. The jury broadly asked the court to "[c]larify" the "specifics" of the instructions on aiding and abetting as they related to assault with significant injury. The judge had already provided aiding and abetting instructions that tracked standard Instruction 3.2. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 3.200 *Aiding and Abetting* (5th ed. rev. 2016). She also had stated that those instructions were applicable to "the crimes charged in the indictment."

However, when giving the part of standard Instruction 3.2 related to *mens rea*, the trial court stated: "With respect to the charge of assault with significant injury *while armed*, regardless of whether the defendant is an aider or abettor or principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with intent or knowledge" (emphasis added). The court did not repeat that sentence "with respect to" the lesser-included offense of unarmed ASBI. Thus, as the trial judge recognized, the jury's note could be read as seeking clarification as to (1) whether an aiding and abetting theory applied only to the charge of ASBI while armed, or whether it applied to all the offenses; and (2) perhaps more specifically, whether the sentence regarding *mens rea* applied only to armed ASBI or whether it applied to every offense, including unarmed

ASBI.  Nevertheless, the jury had not identified any specific concern, nor did it indicate whether its question related to one defendant or both.

The trial judge addressed this potential confusion.  Without singling out any portion of the aiding and abetting instruction, she wrote to the jury that "Instruction 3.2 aiding & abetting applies to every offense with which the defendants are charged."  The sentence regarding *mens rea*, which had begun by stating that it applied to "assault with significant injury while armed," is part of Instruction 3.2.  *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 3.200.  Thus, the court made clear that the principles of aiding and abetting liability (including that sentence) applied to all offenses, including unarmed ASBI.

Earlier, when it began to instruct the jury, the court acknowledged that the instructions were long and that it would be difficult to pay attention as they were read.  It therefore reassured the jurors, "I'll provide you with a copy of my instructions.  During your deliberations you may, if you want, refer to these instructions."  The jury thus could readily apply the judge's clarification to Instruction 3.2 and make the appropriate substitution.  Because it had specifically asked about unarmed ASBI, the jury would now read the sentence about *mens rea* to say: "With respect to *assault with significant injury*, regardless of whether the

defendant is an aider or abettor or principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with intent or knowledge."

In addition, the jury would have been able to identify the standard for "intent or knowledge" by looking at the rest of the jury instructions. The trial judge had correctly instructed that to establish the *mens rea* element of ASBI, the government had to prove beyond a reasonable doubt that "Mr. Plater and/or Mr. Cheeks either intended to cause significant bodily injury to [the victim] or that significant bodily injury to [the victim] would result from his conduct or . . . [Mr. Plater and/or Mr. Cheeks] was aware of and disregarded the risk of significant bodily injury that his conduct created." *See* D.C. Code § 22-404 (a)(2) (2012 Repl.) (providing that the government must prove that the defendant "intentionally, knowingly, or recklessly cause[d] significant bodily injury to another"); *see also Wilson-Bey v. United States*, 903 A.2d 818, 837-38 (D.C. 2006) (en banc) (generally, the *mens rea* that must be proved to convict a defendant of a given offense is the same whether the defendant is charged as the principal offender or as an aider and abettor).

Further, the trial judge had correctly stated (and written)—per Instruction 3.2—that "[a]ny person who in some way *intentionally participates* in the

commission of a crime can be found guilty either as an aider or abettor or as a principal offender" (emphasis added). She also instructed that for aiding and abetting liability to attach, the jury had to find that appellant "knowingly associated himself with the commission of the crime and that he participated in the crime as something he wished to bring about and that he intended by his actions to make it succeed."

The jury therefore had all the information it needed to identify the proper *mens rea* for a conviction of unarmed ASBI under an aiding and abetting theory. It did not seek any further clarification after the trial judge responded to its note. It also evidently continued to carefully weigh the instructions and the evidence because it was not ready to return a verdict until around noon the next day, which was approximately a day and a half after it had initially begun deliberating. *Cf. Blaine v. United States*, 18 A.3d 766, 780 (D.C. 2011) (holding that a reinstruction of the jury likely "prod[ded]" the jury into a guilty verdict given that the jury had deliberated for "more than four days" before sending its note but took "only two more hours" to convict the defendant after the judge responded).

Appellant seems to assume that the jury must have been confused about the required *mens rea* and then erroneously convicted him as a result of an inadequate

response to its note. But this is speculation. The jury had plenty of evidence to conclude that appellant possessed the *mens rea* required for unarmed ASBI. The victim testified that appellant repeatedly hit him in the face and head and "stomped" on him, causing injuries that, as we have already held, supported a finding of significant bodily injury. The victim also testified that appellant "stood over top of me and he told me that he hoped that I die[.]" Appellant's defense centered on lack of participation, not his state of mind. He asserted that he "didn't hit" the victim, that he "never touched him," and that he "was a simple bystander." He also attacked the victim's credibility.

Appellant fails to articulate how the trial judge's response was substantively different than what he asked for. He suggested that the court instruct the jury that "with respect to all the charges, regardless of whether the defendant is [charged as] an aider or abettor, the government must prove beyond a reasonable doubt that [he] personally acted with intent or knowledge." As already discussed, the trial judge effectively gave that instruction by specifying that Instruction 3.2, which included the "intent or knowledge" requirement, applied to "every offense."

The more traditional response would have been to call the jurors back into the courtroom and reread the instructions on aiding and abetting (since the jury had

asked rather generally about the specifics of aiding and abetting), making clear that those principles applied to all the charges. Because the jury had also asked specifically about assault with significant injury, the court, when rereading, could have removed the potentially confusing "while armed" language so that the sentence about *mens rea* read: "With respect to the charge of assault with significant injury, regardless of whether the defendant is an aider or abettor or principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with intent or knowledge."

There is no qualitative difference between that mode of responding and the path the trial judge took. The complete aiding and abetting instructions spanned six paragraphs of standard Instruction 3.2. Instead of spending time rereading these instructions—the vast majority of which would not change—the trial judge reaffirmed the applicability of those instructions while also making clear that the sentence on *mens rea* applied to unarmed ASBI. An intelligent and literate jury could easily refer to the written instructions and tailor them to apply to ASBI (and every other offense). The trial court simply chose the more succinct option.

Because that option removed any confusion just as effectively, the trial judge did

not abuse her discretion.[1]


        The judgment of the Superior Court is hereby


*Affirmed.*

---

[1]    Appellant cites *Alcindore v. United States*, 818 A.2d 152 (D.C. 2003), *Preacher v. United States*, 934 A.2d 363 (D.C. 2007) (per curiam), and *Gray v. United States*, 79 A.3d 326 (D.C. 2013). But in *Alcindore*, the trial judge refused to reinstruct the jury even though "there was sufficient inconsistency between the jury's factual findings and its legal conclusions to show that it was prepared to return a verdict inconsistent with the law." 818 A.2d at 158. Nothing comparable happened here. In *Preacher*, "[t]he court did not answer the jury's specific question, but opted to repeat the standard self-defense instructions." 934 A.2d at 369. Similarly, in *Gray*, the trial judge merely "reread[] the aiding and abetting instruction it had given before the jury retired to deliberate and advis[ed] the jury that if it had additional questions, it should 'go back and attempt to specify a little bit more particularly what you're asking.'" 79 A.3d at 330. Here, the trial judge identified the likely source of the confusion, and she gave additional guidance to clarify her previous instructions.

GLICKMAN, *Associate Judge*, dissenting in part: I respectfully disagree with my colleagues regarding appellant's claim that the trial court did not respond appropriately to the jury's request to "[c]larify instructions on the specifics of the aiding & abetting[,] specifically for the assault w[ith] significant injury." How best to respond to a jury's request for guidance is a decision committed to the trial court's discretion, but "[w]hen a jury sends a note which demonstrates that it is confused, the trial court must not allow that confusion to persist."[1] The court must respond in a way that addresses the jury's particular difficulties and dispels its confusion with "concrete accuracy."[2] For the following reasons, I conclude that the response in this case fell prejudicially short of that standard.

First, simply telling the jury that the instruction it already had received on aiding and abetting applied to all the charges was not responsive to the question the jury asked. The jury's question was not *whether* the aiding and abetting instruction applied to unarmed ASBI, but specifically *how* it applied to that charge. Indeed, the crossed-out question in the note, which the court presumably saw, showed that the jury did not mean to ask *whether* the aiding and abetting instruction applied to

---

[1] *Alcindore v. United States*, 818 A.2d 152, 155 (D.C. 2003).

[2] *Id.* (quotation marks omitted).

the unarmed ASBI charge. Moreover, the court identified the likely reason for the jury's uncertainty – the instruction required proof of *mens rea* for armed ASBI (including knowledge by the aider and abettor that the principal assailant was armed) that it did not appear to require for the lesser-included unarmed offense. It is entirely understandable that a jury parsing the language of the instruction would consider the omission important and be confused as to whether and, if so, what *mens rea* had to be proved to convict appellant as an aider and abettor of unarmed ASBI. The jury's confusion very well may have been heightened because the government asked it to convict appellant of ASBI based on Harris's stab wounds (and not on his other injuries). This injected an additional subtlety that the instruction had left unanswered – whether the jury needed to find that appellant knew the principal assailant was armed in order to find appellant guilty as an aider and abettor of *unarmed* ASBI based on the victim's stab wounds.

I think we must recognize that the jury's request for specific clarification indicated a substantial likelihood that it found the aiding and abetting instruction confusing with respect to the *mens rea* required to convict appellant of unarmed ASBI. The court's brief and non-specific response did not directly and clearly dispel this probable confusion about an essential element of the charged offense. Instead, the response left it to the jury to continue struggling with the ambiguities

in the instruction.[3]  I do not deny that the court's response *might* have enabled an "intelligent and literate" jury to reason out the proper *mens rea* for a conviction of unarmed ASBI under an aiding and abetting theory.  *Ante* at 21.  But our cases require more than that mere possibility.  We have said that "[w]hen a jury indicates confusion about an important legal issue, it is not sufficient for the court to rely on more general statements in its prior charge.  A conviction ought not to rest on an equivocal direction to the jury on a basic issue."[4]

Second, the explicit instruction that appellant sought – that to convict him of unarmed ASBI as an aider and abettor, the government also had to prove he acted with the same intent or knowledge that conviction of the offense as a principal

---

[3]  That the separate instruction on unarmed ASBI stated each element of the offense including the *mens rea* element did little, in my view, to help the jury understand how to apply the ambiguous aiding and abetting instruction.  The jury apparently was confused in spite of the ASBI instruction, and the court's response to the jury note did not even advert to it.

[4]  *Euceda v. United States*, 66 A.3d 994, 1009 (D.C. 2013) (quoting *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989), and *Bollenbach v. United States*, 326 U.S. 607, 613 (1946)); *cf. Gray v. United States*, 79 A.3d 326, 337-38 (D.C. 2013) ("[O]n the facts of this case – including that the jury already had a written copy of the aiding and abetting instructions at the time the first note was sent – simply re-reading the aiding and abetting instructions did not come close to clearing away the jurors' confusion with concrete accuracy.") (internal quotation marks omitted).

would require – was legally correct[5] and would have been more responsive to the jury's request for clarification of aiding and abetting as applied to unarmed ASBI. In my view, therefore, the court should have given such a supplemental instruction instead of declining to do so on the premise that it was "in the instruction already."

I thus conclude that the court exercised its discretion erroneously in responding to the jury's note. I cannot deem the instructional error harmless. Surely the jury's inquiry was no mere academic exercise. We must infer that the correct application of the aiding and abetting instruction to the unarmed ASBI charge was an important question to which the jury needed an answer in order to render a verdict. Presumably this was because the jury was not prepared to convict appellant of the offense as a principal and was uncertain whether it could convict him as an aider and abettor. The jury's uncertainty evidently was due to confusion

---

[5] *See, e.g.*, *Vaughn v. United States*, 93 A.3d 1237, 1268 (D.C. 2014) (reversing where court "correctly charged the jury that it had to find the same *mens rea* to convict . . . as a principal or an aider and abettor . . . [but] then gave an instruction for aider and abettor liability that inappropriately combined the standards for aggravated assault and [ASBI]"). As a general rule, the *mens rea* – e.g., intent, knowledge, or recklessness – that must be proved to convict a defendant of a given offense is the same whether the defendant is charged as the principal offender or as an aider and abettor. *See Wilson-Bey v. United States*, 903 A.2d 818, 837 (D.C. 2006) (en banc); *Kitt v. United States*, 904 A.2d 348, 354, 356 (D.C. 2006); *see also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 3.200 Aiding and Abetting (5th ed. rev. 2016).

about what *mens rea* the government needed to prove. The failure to dispel that confusion left the jury free to misconstrue the aiding and abetting instruction and convict appellant of ASBI without finding the *mens rea* element of the offense. That the jury continued to deliberate for some time before returning its verdict, *ante* at 19, may be a sign of how difficult the jury found it to figure out what the government had to prove; it provides no assurance the jury figured that out correctly. On the record before us, therefore, I believe we cannot be confident the jury would have reached the same verdict in this case had the court answered its inquiry as appellant requested it to do.[6]

---

[6] Because of the likelihood that the instructional error led the jury to convict appellant without finding an essential element of the charge against him, we must consider the error to have been of constitutional magnitude – meaning we would have to find it harmless beyond a reasonable doubt in order to excuse it. *See Wilson-Bey*, 903 A.2d at 843-44; *cf. Potter v. United States*, 534 A.2d 943, 946 (D.C. 1987) ("The provision of an answer to a jury note that is adequate to dispel jury confusion on a controlling issue of a case is such an important aspect of due process of law that we would have to be satisfied beyond a reasonable doubt that an omission to provide them was harmless before we could conclude that it did not vitiate the verdict.").